THOMAS and wife, Appellants, vs. INDUSTRIAL COMMISSION and others, Respondents.

*April 15—June 16, 1943.*

The cause was submitted for the appellants on the brief of *O'Melia & Kaye* of Rhinelander, and for the respondent Industrial Commission on the brief of the *Attorney General* and *Mortimer Levitan,* assistant attorney general.

WICKHEM, J.   Plaintiffs are the unestranged parents of Kenneth Thomas.   They operated as partners a laundry business under the name of Eagle Steam Laundry.   In this business, during 1939 and 1940, their seventeen-year-old son, Kenneth, worked as a truck driver and was paid on the same basis as other employees.   He lived at home, paid nothing for board or lodging.   No child-labor permit had been obtained and his work was after school hours except during the summer period when he worked steadily.   On January 10, 1941, while delivering laundry on his regular route Kenneth Thomas was killed.   The Eagle Steam Laundry was under the Workmen's Compensation Act and

covered by a policy issued by Hardware Mutual Casualty Company. After the death on February 4, 1941, insured procured from applicants a stipulation that employment and liability existed and agreeing to submit the claim to the commission and pay $28 to apply on the liability. The examiner found that decedent was an employee of Eagle Steam Laundry but that because the applicants were also the employers of decedent they were barred from compensation by reason of the decision in *Independence Indemnity Co. v. Industrial Comm.* 209 Wis. 109, 244 N. W. 566. On review by the commission the finding that decedent was also an employee was reversed, it being found that the decedent, although he worked regularly and was paid such sums as he earned and was listed for social security and income tax purposes, was not an emancipated minor, because he spent the money for clothes, paid no board at home, had no labor permit, and his parents were legally entitled to his earnings. For this reason and on the basis of the holding in the *Independence Case, supra,* the application was dismissed and a refund of the death payment into the state treasury was ordered. Upon appeal, the trial court did not determine whether or not employment existed, but held that recovery was barred by the *Independence Case.*

Appellants' contention is that the rule of the *Independence Case, supra,* is wrong on principle and should be repudiated by this court. The respondent, while resisting this contention, asserts that even if the *Independence Case* were to be abandoned, the finding of the commission that Kenneth was not an employee must be sustained as founded on credible evidence. For reasons that will hereafter be set forth, we consider that the findings of the commission are not sustained by the evidence. Therefore, the first question is whether the *Independence Case* was wrongly decided and whether under all the circumstances it should now be repudiated. In the *Independence Case,* Minnie Boss, a widow, was engaged in

operating a farm. She carried workmen's compensation insurance. Her son, Christian, was employed by her at a monthly wage to work on the farm. He came to his death by reason of injuries sustained in the course of his employment. He was unmarried and his mother-employer applied to the Industrial Commission for such relief as she might be entitled to in the premises. The defense of the insurance carrier was that the applicant and employer were one and the same person and that applicant as employer could not be liable to herself or herself recover any compensation or damages or benefit by reason of the statutory liability imposed upon her by the Workmen's Compensation Act for the injury and death of the deceased employee; that the policy covered only the liability of the employer and that no liability existed in this case.

The court there stated the questions to be: (1) May the Industrial Commission make an award directly against an insurance carrier without finding liability of the employer? (2) May the Industrial Commission award compensation to a surviving unestranged parent against herself as employer? The court held that the fundamental purpose of the act is to provide compensation for one who is accidentally injured while in the employ of another who at that time is subject to the act, and that the insurance provisions were for the purpose of guaranteeing payment of compensation to the injured employee in accordance with the terms of the act. It was further held that the compensation act clearly reveals that liability of the employer to the employee or dependent is the primary liability, although proceedings against either the employer or the insurance carrier may be had; that it is the liability of the employer that must be assumed by the insurance carrier, and that no liability exists on the part of the carrier in the absence of liability on the part of employer. Reliance was had upon sec. 102.28, Stats., which provided as follows:

"(2) An employer liable under this act to pay compensation shall insure payment of such compensation in some company authorized to insure *such liability* in this state. . . ."

"(4) If it appears by the complaint or by the affidavit of any person in behalf of the state that *the employer's liability* continues uninsured there shall forthwith be served on the employer an order to show cause," etc.

Sec. 102.30 (1), Stats., provided:

"Nothing in sections 102.03 to 102.34, inclusive, shall affect the organization of any mutual or other insurance company, or any existing contract for insurance of *employers' liability,* nor the right of the employer to insure in mutual or other companies, against such liability, or against *the liability* for the compensation provided for by sections 102.03 to 102.34, inclusive. . . ."

Sec. 102.31 (1), Stats., provided:

". . . Such contract shall be construed to grant full coverage of all *liability of the assured* under and according to the provisions of sections 102.03 to 102.34, inclusive, notwithstanding any agreement of the parties to the contrary unless the industrial commission has theretofore by written order specifically consented to the issuance of a contract of insurance on a part of such liability. . . ."

Under these sections it was held, (1) that applicant sustained no liability to herself, and (2) that in the absence of such liability there was no liability upon the Insurance Company. This is criticized by appellant as applying rules of contract law to a statutory liability. On this branch of the case we think the *Independence Case, supra,* was rightly decided.

It is of little consequence what labels reminiscent of common-law liability are attached to the statutory obligations. By no process can the conclusion be escaped that the insurance company, even though it may be sued directly, though its con-

tract is not principally one of indemnity or surety in the common-law sense, with attending rights to reimbursement, subrogation, and exoneration, may set up as a defense anything tending to destroy or mitigate the liability of an employer. In every assignment, this court considers such defenses as that there was no relation of employer and employee, that the injury did not arise out of and in the course of employee's employment, and any number of other defenses which go to destroy liability on the part of the employer. It may be proper to term the insurance liability a primary one in the sense that the Insurance Company may be sued directly, and it is undoubtedly proper to regard it as principally for the purpose of assuring payment to the injured employee or his dependents, rather than that of indemnifying the employer. But whatever it be called, the conclusion cannot be avoided that establishment of a liability of the employer under the act to the employee or dependent is a condition precedent to any liability by the Insurance Company. In this respect, the situation is analogous to insurance policies covering liability for the operation of motor vehicles. There is nothing in this inconsistent with *Maryland Casualty Co. v. Industrial Comm.* 198 Wis. 202, 211, 221 N. W. 747, 223 N. W. 444. That case simply holds and we hold here that the purpose of requiring insurance is not to indemnify the employer but to assure the injured employee or his dependent that the employer's liability will be discharged. In fact, in that case the opinion states that the Insurance Company "assumes the employer's obligation to pay compensation. The measure of its liability under its policy and the statute *is the employer's liability to the injured employee.*" As was pointed out in the *Independence Case, supra,* the *Maryland Casualty Co. Case, supra,* assumes that there must exist a liability of the employer and that it is this liability that the insurer must carry. It is suggested that the case of *Hagenah v. Lumbermen's Mut. Casualty Co.* 241 Wis. 226, 5 N. W. (2d) 760, has in effect

reversed the *Independence Case,* but the *Hagenah Case* also assumes that the insurance is against *the liability* of an employer. In *Curt v. Industrial Comm.* 226 Wis. 16, 275 N. W. 447, this court sustained an award of compensation to a minor child injured while working for his father, and this court considered it essential to determine whether the relationship of employer and employee existed between parent and child. The entire opinion is devoted to a consideration of that question for the obvious purpose of determining whether the parent-employer sustained any liability to the applicant. The child was held to be an employee and had a right to a recovery against the insurer because there was a liability to it by the parent. We see nothing whatever to the contention that the *Independence Case* is based on contract law rather than the statutory provisions of the Workmen's Compensation Act. Reference is made to those sections of the statute relied on by the court in the *Independence Case* and heretofore set out as statutory proof that the statute contemplates a liability on the part of the employer to the employee who is injured, or in case of his death, to his dependents.

What has heretofore been said does not, of course, decide this case. The real question is whether it was correctly decided in the *Independence Case, supra,* that there was no liability under the compensation act. The argument that there is a liability is grounded on the fact that sec. 102.03, Stats., labeled "Conditions of liability," contains no exclusion clause to cover such a case as we have before us and that it is an exclusive description of the conditions of liability. It is further argued that sec. 102.51 completely describes "dependents" without reference to their possible identity with the employers. Thus, it is asserted that it is the duty of this court simply to check these several subsections of sec. 102.03 to ascertain the conditions of liability and then in case of situations where the dependency section is in force to literally apply the dependency section. This is, of course, an arguable position,

but it appears to us to overlook two things : (1) Sec. 102.03 is stated in terms of limitation, that is to say, liability exists *only* where the listed conditions concur, and (2) there is no purported definition of the term "liability" as used in sub. (1) of the section. This is especially important since the subsections do not purport completely to define liability. Liability, under the common law and under every statutory definition that we can recall, has always contemplated different persons on the right and duty side of the relationship. This rule is so well established that it ought to require the clearest sort of language in a statute to come to a conclusion that liability was contemplated when as here the same person occupies the right and duty position and the duty is owed by the person who claims the right. This was the view of the court in the *Independence Case,* and while the point is, of course, debatable, we cannot say that this conclusion, which is in accord with the universal conception of liability, is a clearly mistaken one. The operation of the dependency section is clearly dependent upon the establishment of a liability and is of no moment once it is determined that no liability exists. This court consistently applied these principles in the *Curt Case, supra,* compensation being granted there because the injured minor was in being and a liability could run to him. There has been some effort to escape this by arguing that the partnership should be treated as an entity, but it is well established that the Uniform Partnership Act is founded upon the aggregate, and not on the entity theory so far as all substantive rights, liabilities, and duties are concerned. Whatever recognition is given to the entity theory in the partnership act is solely for procedural or conveyancing purposes and this comment is applicable to references in the Workmen's Compensation Act to partners.

Apart from the foregoing, which convinces us that the *Independence Case, supra,* was rightly decided, it may be added that by no argument that we can think of can it be

held to be demonstrably wrong. The decision was handed down in 1932 and the construction of the statute adopted has by the well-established doctrine of this court become a part of the statute. In *Eau Claire Nat. Bank v. Benson,* 106 Wis. 624, 627, 82 N. W. 604, the court said:

"Courts are not responsible for the law. It is their province to declare and apply it and to construe statutes and constitutions in accordance with the will of the lawmaking power, where construction becomes necessary. When such construction has once been given to a law and finally established as a part thereof, it is as much a part of it as if embodied therein in plain and unmistakable language. *State ex rel. Heiden v. Ryan,* 99 Wis. 123. When that situation exists it is the province of the legislature alone to change the law. The court should not attempt it, whatever may be the notions of judges as to what the law ought to be."

See also *Milwaukee County v. City of Milwaukee,* 210 Wis. 336, 341, 342, 246 N. W. 447; *Morris v. Sampsell,* 224 Wis. 560, 272 N. W. 53; *Will of Kootz,* 228 Wis. 306, 280 N. W. 672.

Since the *Independence Case, supra,* many sessions of the legislature have come and gone and the legislature has never amended the statute to change the rule of the *Independence Case.* This is significant. In *Union F. H. S. Dist. v. Union F. H. S. Dist.* 216 Wis. 102, 106, 256 N. W. 788, the court said:

"Since that time two legislatures have come and gone without amending the law; this they would in all probability have done if they had deemed the opinion of the attorney general unsound." See also *Will of Kootz, supra.*

In addition to this, the Industrial Commission, to which is committed the enforcement of the Workmen's Compensation Act, has relied upon the interpretation established by the *Independence Case, supra,* and defends it upon this appeal.

The final question is whether it was correctly determined by the commission that the insurer sustained no liability for payment of $2,000 into the state treasury because Kenneth Thomas was not an employee. Sec. 102.49 (5), Stats. 1939, provides, so far as material:

"In each case of injury resulting in death, leaving no person wholly dependent for support, the employer or insurer shall pay into the state treasury such an amount, when added to the sums paid or to be paid on account of partial dependency, as shall equal the death benefit payable to a person wholly dependent, such payment to the state treasury in no event to exceed two thousand dollars."

It is apparent that this liability is not governed by the considerations involved in the *Independence Case, supra,* but depends upon whether the finding that Kenneth Thomas was not an employee is sustained by the evidence. In such a situation the statute requires that there be paid to the state treasury the difference between the death benefit payable to a person wholly dependent and such sums as have been paid or are payable on account of partial dependency, the total payment not to exceed $2,000. Once the relation of employer and employee is established and an injury has resulted in death with neither total nor partial dependencies, the maximum payment of $2,000 to the state treasury is specifically required by the statute. There is, of course, a liability by the employer and insurer to the state and the question in the *Independence Case* does not arise. The commission urges that there was sufficient evidence to sustain its finding that Kenneth Thomas was not an employee. We are of the view that this contention cannot be sustained. Sec. 102.07, Stats., so far as material, defines "employee" as follows:

"(4) Every person in the service of another under any contract of hire, express or implied, . . . including minors *(who shall have the same power of contracting as adult em-*

*ployees*), but not including farm laborers, domestic servants and any person whose employment is not in the course of a trade, business, profession or occupation of his employer."

In our opinion there is no question upon the record that deceased was working regularly at the time of his death under a contract to pay him upon a commission basis for the delivery work done by him. He was hired and paid at the regular wage paid other employees for these services and the details of the work were under the control of the employer. It is true that he lived at home and was required to pay no board. We conclude, (1) that this did not impair his status, and (2) that the rule of the *Curt Case, supra,* applies. He was allowed to contract for wages and to keep his earnings. Under the express terms of sec. 102.07 (4), Stats., he was given the same power to contract as an adult, and under the decision in the *Curt Case* this included the power to contract with his parents for the purposes of the Workmen's Compensation Act. We consider that sec. 102.49 (5), Stats. 1939, applies, and that the insurer must pay into the state treasury the sum of $2,000.

*By the Court.*—Judgment modified as indicated in the opinion and as so modified is affirmed. No costs are to be taxed upon this appeal, appellant to pay the clerk's fees.

ROSENBERRY, C. J. (*dissenting*). Upon reconsideration of the record, I find myself unable to concur in the decision of the court in this case for the reasons hereinafter stated: I concurred in the decision in the case of *Independence Indemnity Co. v. Industrial Comm., supra,* without realizing as I should have done that it in principle overruled the *Maryland Casualty Co. Case, supra.* I do not question the general rule that a decision of this court considerately made should not be overruled except for strong and compelling reason. On the other hand, when the court is convinced that a prior

decision is erroneous, in my opinion it should not hesitate to admit its error and correct it at the first opportunity except in cases where the decision has become a rule of property. It has been my observation that judges are in favor of overruling cases which they are convinced are erroneous but are very strongly opposed to overruling a case which in their judgment was correctly decided. In the end it comes down to a matter of opinion. I am of the view that the overruling of the *Independence Case, supra,* would do justice in this and similar cases and accomplish what was sought to be accomplished by enactment and amendment of ch. 102, Stats.

Nor can I concur in the view that a decision of this court construing a statute and so becoming a part of the statute is thereby placed beyond the reach of subsequent reconsideration by the court. For this position there exists what seems to me to be ample authority.

The case of *Swift v. Tyson,* 16 U. S. 1, was decided in 1842. It construed a section of the judiciary act of 1789. The opinion was written by Mr. Justice STORY. It was held that while the supreme court of the United States was bound by the statutory enactments of the state in the consideration of a case arising in that state, it was not bound by the common law of that state or by the decisions of its courts. While questioned many times, it remained in force until 1937, a period of ninety-five years, when it was overruled in *Erie R. Co. v. Tompkins,* 304 U. S. 64, 80, 58 Sup. Ct. 817, 82 L. Ed. 1188, opinion by Mr. Justice BRANDEIS, and this without any change in the statutory law. The court did not hesitate to overrule *Swift v. Tyson* on the ground that by the doctrine laid down in that case—

"This court and the lower courts have invaded rights which in our opinion are reserved by the constitution to the several states."

In our own court, in the case of *Reiter v. Grober,* 173 Wis. 493, 181 N. W. 739, decided in 1921, this court overruled a

doctrine laid down in *Prideaux v. Mineral Point,* 43 Wis. 513, decided in 1878, to the effect that the negligence of a driver should be imputed to the occupants of the vehicle which he was driving. While this did not involve the construction of a statute, it deprived litigants of a supposed right which they enjoyed under the decision of *Prideaux v. Mineral Point,* which had been in effect for forty-three years. This court had a number of times criticized the rule as harsh and had suggested that the rule be changed by legislation.[1] But no heed was paid to the suggestion, quite likely for the same reason that no action has been taken by the legislature in regard to the *Independence Case, supra,*—there is no one sufficiently interested to press it upon the attention of the legislature. In view of these cases and because I am convinced that the *Independence Case* is wrong, I feel it a duty to express my opinion in regard to correctness of the decision in that case.

All members of the court concur in the view that at the time of his injury and death, Kenneth was an employee of the plaintiffs within the meaning of the compensation act.

It is also apparent that the plaintiffs as parents of Kenneth by reason of his death sustained the same loss that they would have sustained if Kenneth had been killed while in the employment of a third person. The right to recover against the insurer is denied them on the ground that because it is said, they cannot be legally liable to themselves and therefore they have no right to a death benefit under the provisions of sec. 102.48, Stats. That section provides:

"If the deceased employee leaves no one wholly dependent upon him for support, partial dependency and death benefits therefor shall be as follows:

"(1) An unestranged surviving parent or parents, residing within any of the states or District of Columbia of the

[1] *Lightfoot v. Winnebago Traction Co.* (1905) 123 Wis. 479, 102 N. W. 30.

United States, *shall receive a death benefit of twelve hundred dollars. . . ."*

Under the Workmen's Compensation Act, as passed in 1911, the employer was not required to carry insurance. The act (now ch. 102, Stats.) was amended by ch. 599, Laws of 1913. Sec. 2394—24, 2, provided:

"An employer liable under this act to pay compensation shall insure payment of such compensation in some company authorized to insure such liability in this state. . . ."

That provision ever since has been and still is a part of the Workmen's Compensation Act and is found in sec. 102.28 (2), Stats. 1939, which was in force at the time this action arose. The employer is required *to insure payment of such compensation.* It is to be noted that it is not a policy which merely insures the employer against loss or against liability. What is insured is payment of compensation and benefits to the employee or the dependent, not the liability of the employer.

Sec. 102.30, Stats., provides that by certain arrangements therein described, benefits in addition to compensation may be provided for. It further provides that the person entitled to compensation shall have—

*"the right to enforce in his own name, in the manner provided in this act, the liability of any insurance company which may have insured the liability for such compensation,"* etc.

Sec. 102.31 (1), Stats., provides:

"Every contract for the insurance of the compensation herein provided for, or against liability therefor, shall be deemed to be made subject to the provisions of this act, and provisions thereof inconsistent with the act shall be void. Such contract shall be construed to grant full coverage of all liability of the assured under and according to the provisions

of the act, notwithstanding any agreement of the parties to the contrary," etc.

The contract issued by the insurer in this case provides:

This insurer "does hereby agree with this employer, named and described as such in the declarations forming a part hereof, as respects personal injuries sustained by employees, including death at any time resulting therefrom as follows:

"I (a) To pay promptly to any person entitled thereto, under the Workmen's Compensation Law and in the manner therein provided, the entire amount of any sum due, and all instalments thereof as they become due.

"(1) To such person because of the obligation for compensation for any such injury imposed upon or accepted by this employer under such of certain statutes, as may be applicable thereto, cited and described in an indorsement attached to this policy, each of which statutes is herein referred to as the Workmen's Compensation Law, and

"(2) . . .

"It is agreed that all of the provisions of each Workmen's Compensation Law covered hereby shall be and remain a part of this contract as fully and completely as if written herein, *so far as they apply to compensation or other benefits for any personal injury or death covered by this policy, while this policy shall remain in force.*"

There can be no doubt that if Kenneth had survived the accident in which he met his death, he would have been entitled to recover compensation for his injuries from the defendant insurer in a proceeding brought directly against it. The policy further provides:

*"This agreement is subject to the following conditions:*

. . .

"D The obligations of paragraph I (a) foregoing are hereby declared to be the direct obligations and promises of the company to any injured employee covered hereby, or, in the event of his death, to his dependents; and to each such employee or such dependent the company is hereby made

directly and primarily liable under said obligations and promises. This contract is made for the benefit of such employees or such dependents and is enforceable against the company, by any such employee or such dependent in his name or on his behalf, at any time and in any manner permitted by law, whether claims or proceedings are brought against the company alone or jointly with this employer. . . ."

If under the provisions of the statutes above referred to and in accordance with the terms of the contract hereinbefore set out the employee can maintain an action directly against the insurance carrier, I see no reason why the plaintiffs who are unestranged surviving parents may not recover the statutory death benefits provided for in sec. 102.48, Stats., directly from the Insurance Company. The right of independent recovery against the insurance carrier is to my mind exactly the same for an injured employee as for an unestranged parent claiming death benefits. They both rest upon the express language of the statute as well as upon the language of the contract.

The principal reason why I cannot agree with the opinion of the court is that the court has placed a construction upon certain sections of the Workmen's Compensation Law which in my opinion unduly limits and restricts them. The sections are as follows:

"102.28 (2) An employer liable under this act to pay compensation shall insure payment of such compensation in some company authorized to insure *such liability* in this state. . . ."

"(4) If it appears by the complaint or by the affidavit of any person in behalf of the state that the *employer's liability* continues uninsured there shall forthwith be served on the employer an order to show cause," etc.

"102.30 (1) Nothing in sections 102.03 to 102.34, inclusive, shall affect the organization of any mutual or other insurance company, or any existing contract for insurance of *employer's liability,* nor the right of the employer to insure

in mutual or other companies, against such liability, or against *the liability* for the compensation provided for by sections 102.03 to 102.34, inclusive. . . ."

"102.31 (1) . . . Such contract shall be construed to grant full coverage of all *liability of the assured* under and according to the provisions of sections 102.03 to 102.34, inclusive, notwithstanding any agreement of the parties to the contrary unless the industrial commission has theretofore by written order specifically consented to the issuance of a contract of insurance on a part of such liability. . . ."

Because of the words "such liability" in sec. 102.28 (2), Stats., "the employer's liability" in sub. (4), the use of the words "employer's liability" and "the liability" in sec. 102.30 (1), and the words "liability of the assured" in sec. 102.31, it is held that the contract of the insurer is one of indemnity and that all that is accomplished by the statute and by the contract of insurance is to save the employer harmless from the liability imposed by statute upon the employer and therefore the liability of the insurer is that of an indemnitor. If the word "amount" is inserted before each of the phrases the meaning becomes clear. I agree that the effect of the statute and the policy is to save the employer harmless but in my opinion the statute as construed by the contract of the insurer goes further and imposes upon the insurance carrier, in the language of the contract, a direct obligation and promise of the insurer to discharge the obligations imposed by paragraph I (a). The liability of the insurer equals in amount that of the employer but its liability is not that of the employer. Its liability is created by statute and by contract and is direct to the person entitled to compensation or benefits. The contract itself declares that it is made for the benefit of dependents and is enforceable against the company by such dependents. That such was the view of the legislature it seems to me to be clearly indicated by sec. 102.62, which provides:

"In case of liability for the increased compensation or increased death benefits provided for by section 102.57 or in-

cluded in section 102.60, *the liability of the employer shall be primary and the liability of the insurance carrier shall be secondary. . . ."*

This section was introduced into the Workmen's Compensation Law by a revision law which became sec. 1, ch. 624, Laws of 1917. This chapter provided that compensation and death benefits under the act should be treble the amount otherwise recoverable, (a) in case the injured employee be a minor of permit age and had no permit; (b) if the injured employee be a minor of permit age, or over, or permitted to work at prohibited employment.

The provision that the liability of the employer should be primary and not secondary, was intended to make the employer bear the burden of violating the law in the respects stated.

If the legislature had been of the view that the liability of the employer was primary and that of the insurance carrier was merely one of indemnity it would not have enacted sec. 102.62, Stats. The liability of the insurer under the Workmen's Compensation Act, except in a single case of liability for penalties, is a primary and direct liability, and it was so held by this court in a case where the decision turned upon that precise question, *Maryland Casualty Co. v. Industrial Comm.* (1929) 198 Wis. 202, 221 N. W. 747, 223 N. W. 444. The question in that case was whether the Industrial Commission had jurisdiction in a compensation case to determine whether a contract existed between the employer and the insurance carrier and this upon the ground that the Industrial Commission had no jurisdiction to determine whether an employer had made a contract with the insurance carrier for the reason that if the act had attempted to confer such power upon the Industrial Commission a serious question as to the constitutionality of the act would be raised. Upon rehearing the court changed its position and squarely held that the Industrial Commission had such jurisdiction

on the ground that under the provisions of the statute, the insurer had consented thereto. The court said (p. 211) :

"From a consideration of the whole statutory scheme we conclude that the provisions of the statute relating to insurance are principally for the purpose of securing to the employee payment for compensable injuries. The statute not only gives him a right against his employer, but when the right has been vindicated and the amount of compensation ascertained, it seeks to secure payment to him of the compensation. Therefore, when an insurance company undertakes to write workmen's compensation insurance *it assumes the employer's obligation to pay compensation*. The measure of its liability under its policy and the statute is the employer's liability to the injured employee. It is permitted to make no defense which will impair the employee's right to payment of compensation. *Its liability is in effect primary. It is not a mere indemnity*. It is therefore considered that a controversy relating to compensation insurance is, within the meaning of the provisions quoted in the original opinion, a dispute or . controversy concerning compensation."

If as the court now holds, a contract of the insurer is a mere indemnity contract, the court would have adhered to its original position. The *Independence Case, supra,* in principle but not in terms overruled the *Maryland Casualty Co. Case, supra,* and so the error crept into the law. The *Independence Case* was decided as it was because too much weight was given to labels reminiscent of common-law liability and too little weight given to the clear language of the statute and the contract.

.The insurer in this case contracted to pay to the person entitled thereto all benefits. It did not make its contract to pay contingent upon the employer's liability. The liability of the employer is a measure of the insurer's liability, not the source of it. The statute already quoted provides that under the circumstances of this case the plaintiffs "shall receive a death

benefit of twelve hundred dollars." It does not say that they shall receive it upon any condition whatever.

In the *Maryland Casualty Co. Case, supra,* the court said (p. 209):

"A study of the Workmen's Compensation Act (ch. 102, Stats.) convinces us that with respect to insurance the statutory scheme was intended to do more than merely protect the employer against liability on account of injuries sustained by his employees. The quite evident purpose of the whole scheme is to guarantee payment of compensation in accordance with the terms of the act to the injured employee. Instead of providing for a fund to be administered by the state, the act requires the employer to 'insure payment of such compensation in some company authorized to insure such liability in this state unless such employer shall be exempted from such insurance by the industrial commission.' "

The statute requires the insurer to insure "liability," in effect to insure payment of liability and not merely to save the employer harmless. It seems to me that to deny the plaintiffs the right to benefits in this case violates the language as well as the spirit and purpose of the compensation act.

In my opinion the *Independence Case, supra,* should be overruled; the judgment appealed from reversed; and the record remanded to the trial court with directions to the trial court to enter judgment in favor of the plaintiffs in accordance with the statute.

I cannot concur in the construction placed by the court upon sec. 102.49 (5), Stats. In my view, sec. 102.48 and sec. 102.49 (5) deal with a single situation; that is, a case where the injured employee dies leaving no person wholly dependent upon him for support.

In order to present the statutory situation, it is necessary to have the two sections in juxtaposition. The material part of sec. 102.48, Stats., provides:

"If a deceased employee *leaves no one wholly* dependent upon him for support, partial dependency and death benefits therefore shall be as follows: .

"(1) An unestranged surviving parent or parents residing within any of the states or District of Columbia of the United States, shall receive a death benefit of twelve hundred dollars. : . .

"(2) In all other cases the death benefit shall be such sum as the commission shall determine to represent fairly and justly the aid to support which the dependent might reasonably have anticipated from the deceased employee but for the injury. To establish anticipation of support and dependency, it shall not be essential that the deceased employee made any contribution to support. . . ."

Sec. 102.49 (5), Stats., provides:

"In each case of injury resulting in death, leaving no person wholly dependent for support, the employer or insurer shall pay into the state treasury such an amount, when added to the sums paid *or to be paid on account of partial dependency,* as shall equal the death benefit payable to a person wholly dependent, such payment to the state treasury in no event to exceed two thousand dollars. . . ."

The provisions made by statute in the event that the employee dies leaving one wholly dependent upon him for support are as provided in secs. 102.46 and 102.51, Stats. Secs. 102.48 and 102.49 deal solely with death benefits and were added to the Workmen's Compensation Act by ch. 403, Laws of 1931. These sections deal with the situation where the injured employee dies not leaving a person wholly dependent upon him. They were enacted at the same time and are clearly in *pari materia.*

The dependency referred to in sec. 102.49 (5), Stats., is the partial dependency provided for by sec. 102.48. By that section unestranged surviving parents are conclusively presumed to be partially dependent to the extent of $1,200. By sec. 102.42 other dependency is to be established in accord-

ance with the provisions of sec. 102.51. In other words, what is due the parents under sec. 102.48 is a conclusively presumed partial dependency and in other cases partial dependency must be established.

Under the facts of this case, the most that the state could possibly be entitled to would be the difference between $1,200 and $2,000. The state is not entitled to the $1,200 because there is no one wholly dependent and the unestranged parents are partially dependent. In my opinion the parents are entitled to receive this $1,200. The court holds that the parents are not entitled to receive the $1,200 because of the *Independence Case, supra,* which, as I have already said, in my opinion was wrongly decided.

I am authorized to state that Mr. Justice MARTIN and Mr. Justice BARLOW concur in this opinion.